### CREECH v. CHAR. & WEST. CAR. RY.

1. CONTRIBUTORY NEGLIGENCE—RAILROADS—PASSENGERS.—Whether a person in boarding a train moving at three miles an hour is guilty of contributory negligence depends on all the surrounding circumstances, and cannot be so declared as matter of law.

2. NEGLIGENCE—IBID.—IBID.—Allegations that a railroad stopped its train at the crossing of another railroad, and while so stopped it was accustomed to receive as passengers those who might board its train, that the train did not stop at such crossing on a certain day, but slowed down to three miles an hour, and as plaintiff attempted to board it, and while holding to the hand rail, its speed was increased, and he was thrown down and injured, states no cause of action for negligence either under the statute or. at common law.

Before GAGE, J., Barnwell, November, 1902.    Reversed.

Action by Frank H. Creech against Charleston and Western Carolina Railway Co. From order overruling demurrer to complaint, defendant appeals.

*Messrs. S. J. Simpson, Laurie T. Izlar, Jos. W. Barnwell,*

*B. L. Abney* and *Robert Aldrich,* for appellant, cite: *No negligence alleged:* 25 S. C., 24; 35 S. C., 381. *Statute requiring stopping at railroad crossings does not apply to passengers:* 44 Ill. App., 56; 38 S. C., 136; 39 S. C., 514; 64 S. C., 316, 546. *Violation of railroad regulations here is not negligence to plaintiff:* 21 S. C., 466; 26 S. C., 490; 29 S. C., 96; 22 S. C., 557; 27 S. C., 71; 64 S. C., 553. *As to negligence in getting on or off moving trains:* 62 S. C., 130; 5 Ency., 2 ed., 655; 8 Col., 163; 48 Neb., 65; 40 La. Ann., 800; 163 Mass., 245; 67 Miss., 604; 128 Mo., 661; 91 Ala., 421; 108 N. C., 34.

*Messrs. Bellinger & Townsend* and *Davis & Best,* contra. The former cite: *To render complaint demurrable therefor, it should appear from facts stated conclusively that plaintiff was guilty of contributory negligence:* 63 N. W., 1027; 91 Ala., 421; 99 Ala., 545; 75 Mo., 475; 69 N. Y., 196; 49 N. Y., 177; 56 N. Y., 302; 4 Robt., 377; 63 N. Y., 556.

July 3, 1903. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal is from an order overruling a demurrer to the complaint. For the purpose of this appeal it is sufficient to state the third and fourth paragraphs of the complaint as follows:

"III. That at the railway station of the defendant in the town of Fairfax, the defendant's road crosses at grade the road and track of the South Bound Railroad Company, at which crossing all trains upon defendant's road are required to come to a full stop before crossing. That at the times hereinafter mentioned the defendant, by its servants, lessees and licensees, were accustomed to receive and carry passengers for Barnwell and other points on the road of the said Carolina Midland Railway Company and Southern Railway Company, north of Allendale, who might board the train of the Southern Railway Company so run and operated over the road of the defendant while said trains were stopped at

34—66

said crossing for the purpose of crossing said track of the South Bound Railroad Company.

"IV. That on the 26th day of January, A. D. 1900, the plaintiff went to the station of the defendant at said crossing in Fairfax, with a number of other intending passengers, to take said Southern passenger train so run over the track of the defendant, for Barnwell, S. C., and was ready to pay his fare as passenger upon said train. That as said train came up to said crossing it reduced its speed to the rate of three or four miles an hour, but negligently and carelessly failed to come to a full and complete stop before crossing the said track of the South Bound Railroad, but just before reaching said crossing and as the plaintiff caught hold of the hand rail to the platform of one of the cars of the said train to board same, the defendant, by its said servants, licensees and lessees, negligently and carelessly and suddenly increased the speed of said train, thereby causing the plaintiff to be caught, pulled and carried along with the same and thrown to the track in such manner that his head and face was cut and bruised and his fingers run over and mashed by the train, so that three fingers on his left hand had to be amputated, and also bruised his hip and side, otherwise shocking and injuring his nervous system, which injuries are permanent and causing him great pain and anguish, to his damage in the sum of $10.000."

To this complaint defendant interposed an oral demurrer that it did not state facts sufficient to constitute a cause of action upon the following grounds:

"1. That under the statute law of South Carolina (Rev. Stat. 1893, sec. 1684,) the stopping of a train before crossing the track of another road is not intended for the benefit or protection of persons desiring to board such trains at such crossings, and, therefore, not stopping at such crossings would not be negligence for which the defendant could be held responsible in the present case under said statute.

"2. That under the statute law (*Ibid.,* sec. 1687,) of said State a railroad company is required to cause all of its trains

of cars for passengers to entirely stop upon each arrival at a station advertised by such company as a station for receiving passengers for a sufficient time to receive said passengers thereon, and there being no allegation in the complaint that the place where the plaintiff attempted to board the defendant's train was a station so advertised, it was not negligence not to stop for the plaintiff, under the allegations of the complaint.

"3. That a person intending to get on a train is not justified in making an attempt to get on if the train does not stop at a station, and, therefore, the allegations of the complaint showing that plaintiff did make such an attempt at the crossing, he was guilty of contributory negligence in so doing, and, therefore, has stated no cause of action.

"4. That even if it is not under all circumstances contributory negligence for a person to attempt to get on a moving train, yet no circumstances are stated in the complaint to justify such attempt, and, therefore, the plaintiff under his own showing is guilty of contributory negligence, and he has stated no cause of action.

"5. That not only are no circumstances stated in the complaint justifying the attempt to get on said train while moving, but there are circumstances alleged therein directly showing negligence on the part of the plaintiff and no negligence on the part of defendant company, it being alleged that the plaintiff attempted to board the train before it reached the crossing, and it not being alleged that the defendant was accustomed to stop its trains for passengers at the crossing."

The reasons which induced the Court to overrule the demurrer are thus stated in the "case:"

"I don't think, gentlemen, that the statutes have anything to do with this case. I think the statute with reference to a railroad crossing was not passed to affect the rights of parties under circumstances like this, and don't think the statute with reference to stopping at railroad stations has anything to do with this case. The serious question about the case

is whether or not the complaint states a case of contributory negligence—that is the only question about it; if it is clear that it does, then it cannot be sustained, and whether it does or not is the question now at issue. What is negligence, is never a question of law unless it be so grossly negligent that the minds of all men will come to the same conclusion. For instance, if it is stated in the complaint that the train ran by there twenty-five miles an hour and the plaintiff tried to board it, negligence there would be a conclusion of law, because it would be such an act as all men would come to the same conclusion on. That is an extreme case. Now, coming down from twenty-five miles an hour, you get to a point where men begin to differ; some men would say the act was negligent, while other men would say it was not, and when you reach the stage that men differ about what the ordinary man would do under like circumstances, then it is a mixed question of law and fact.

"The complaint is a statement of a cause of action at common law. The essence of it is that the railroad was accustomed to stop there; it makes no difference that it was at Fairfax, might have been in an old field miles away from the station. The allegation is that the railroad was accustomed to stop there to receive passengers. If it was the custom for the railroad to stop there to receive passengers, and if the plaintiff knew it, then if the plaintiff went there relying upon that custom and the train failed to stop, according to the allegations of the complaint, was the plaintiff guilty of contributory negligence in getting on? It depends, I say, upon the habits of men. What does the ordinary man do under like circumstances? If it is a case of negligence, it is my duty to dismiss the complaint; but whether it is or not a case of negligence for a man to board a train at a place where a train was accustomed to stop, moving three miles an hour, is not a case where my mind reaches a decided restful conclusion that the act was a negligent act, and being of that opinion, I would not feel satisfied, especially in view of the allegation in the complaint that the rail-

road was accustomed to stop there and take passengers. I will not say anything more about the act of the plaintiff in trying to get on the train in the hearing of the jury, because it might prejudice his case, and it would be improper for me to do that. While it is a close question, I think under all the circumstances it is so close a case that I would not be justified in sustaining the demurrer."

The exceptions assign error in not holding in accordance with each of the grounds of objection made to the complaint as specified above.

We will first consider the complaint with a view to ascertaining whether it stated such contributory negligence on the part of the plaintiff as should defeat a recovery, as matter of law. For the purpose of this question, we, of course, must assume that the complaint states a case of actionable negligence on the part of the defendant, for a question of contributory negligence cannot properly or logically arise unless the defendant has been guilty of negligence, which is a proximate cause of the injury. The case of *Jarrell* v. *Railroad Co.,* 58 S. C., 492, 36 S. E., 910, approved in *Elkins* v. *Railroad Co.,* 64 S. C., 561, shows that while contributory negligence is ordinarily a matter of defense, yet, if the complaint shows contributory negligence by the plaintiff, that would render the complaint demurrable for insufficiency, since it contained allegations which would defeat recovery on the cause of action alleged. With this rule in mind, the Circuit Court examined the complaint, and reached the conclusion that the facts stated did not show contributory negligence, as matter of law. In the case of *Cooper* v. *Railway,* 56 S. C., 94, 34 S. E., 16, the Court sustained an order overruling a demurrer to the complaint, the decision being based upon the principle that it is not negligence, as matter of law, for a passenger to alight from a moving train on the invitation of the carrier's agent, unless the circumstances are such as to make the danger of alighting obvious to a person of ordinary prudence or sense. That decision accords with the weight of authority in other juris-

dictions, as may be seen by examination of the cases cited in
support of the text in 5 Ency. Law, 2 ed., 664. Assuming
the relation of passenger and carrier, the same principle
should be applied when one is injured while attempting to
board a moving train, since there is no such difference be-
tween the act of boarding and the act of alighting from a
moving train as would fairly justify the application of dif-
ferent rules. As shown by the Circuit Court, the admitted
speed of the train may be so great as to warrant the Court
in concluding therefrom, as matter of law, that boarding
such train was negligent; but ordinarily it should be left
to the jury to determine whether the passenger's act of
alighting or boarding, under all the circumstances, was neg-
ligent. In the case of *Central R. R. etc. Co.* v. *Miles,* 88
Ala., 256, a speed of three miles an hour; and in the case
of *Louisville etc. R. Co.* v. *Crunk,* 119 Ind., 542, 12 Am.
St. Rep., 443, a speed of four and one-half miles an hour;
and in the case of *New York etc. R. Co.* v. *Corelbourn,*
69 Md., 360, 9 Am. St. Rep., 430, a speed of five miles an
hour was held not to show contributory negligence, as mat-
ter of law, in a passenger alighting from a moving train.
In addition to the speed of the train, there are other cir-
cumstances proper to be considered in determining the fact
of contributory negligence, as to the age or vigor of the
passenger, whether he was with or without encumbrance,
whether it was dark or light, the distance between the plat-
form steps of the car and the landing, &c. But the main
circumstances relied on in the demurrer to sustain con-
tributory negligence being the speed of the train, moving at
the rate of three or four miles an hour, and the fact not
warranting a conclusive presumption of contributory negli-
gence, it was not error to deny the demurrer, in so far as it
was based upon contributory negligence. This requires
the third and fourth exceptions to be overruled.

The first and second exceptions are based upon the idea
that the complaint was for negligence arising from the
breach of some duty imposed by statute. The Circuit

Court, however, held, in effect, that the action was not based upon the statutes cited, but was an action for negligence under the common law. Sec. 2131, Civil Code, 1902, provides: "Whenever any railroad crosses the track of any other railroad, it shall be the duty of the engineer or person in control of the train, besides giving the signals required to be given near all crossings, to bring the train to a full or complete stop before crossing the said track; the same rule to apply to the running of a locomotive by itself without a train." Sec. 2134, Civil Code, 1902, provides: "Every railroad company in this State shall cause its train of cars for passengers to entirely stop upon each arrival at a station advertised by such company as a station for receiving passengers upon said trains for a time sufficient to receive and let off passengers." The holding of the Circuit Court that the case stated in the complaint does not fall within either of these statutes, was in accordance with appellant's contention, and is not in any way challenged by the respondent.

We will, therefore, proceed to consider whether the complaint states facts sufficient to constitute an action for negligence at common law. This question is substantially presented by the fifth ground of demurrer. In any action for negligence the complaint must allege *some* duty owing by defendant to plaintiff, or facts from which such duty may be inferred, a negligent breach or negligent performance of such duty, and injury to plaintiff as a proximate result. The complaint alleged two things as negligence: (1) the failure of defendant to bring its train to a full stop at said railroad crossing; (2) the sudden increase of the speed of the train just before reaching the crossing. But what duty owing by defendant to plaintiff was breached by these acts? As to the failure to stop before reaching the crossing, we have seen that no duty to plaintiff imposed by statute was thereby violated. If it be true that a regulation of the defendant company required such stop at the railroad crossing, it is not alleged that such stop was for the purpose of

receiving passengers that might desire to board the train at that point, so as to create a duty to plaintiff as an intending passenger. The complaint does not allege (as the Circuit Court seemed to think) that the defendant's train was accustomed to stop there to receive passsengers. On the contrary, the allegation is that *on January 26, 1900*, defendant was accustomed to *receive and carry passengers* for Barnwell and other points * * * *who might board the train* of the Southern Railway Company so run and operated over the road of the defendant *while said trains were stopped at said crossing for the purpose of crossing* said track of the South Bound Railroad Company." The plain meaning of this allegation is that if any one should happen to get on board the train during the momentary stopping of the train for the purpose of safely crossing the other railroad track, he would be permitted to remain on the train as a passenger. Such allegation is very far from stating any custom of the defendant company to stop at said crossing for the purpose of receiving passengers, so as to warrant plaintiff in believing that he would be allowed to board the train as a passenger, at that point.. Certainly there was no allegation of any custom of defendant to receive as passengers at that point those who might board its moving trains. The complaint in the third paragraph alleges "that at the railway station of the defendant in the town of Fairfax, the defendant's road crosses at grade the road and track of the South Bound Company, &c.," and in the fourth paragraph, "that on the 26th day of January, A. D. 1900, the plaintiff went to the *station* of the defendant at said crossing in Fairfax, &c." We may infer from these allegations, either that the crossing was also a station, or that there was a station at the crossing, but it is not alleged that the station was for the purpose of receiving passengers, nor is it alleged that defendant was accustomed to receive passengers at such station. When plaintiff attempted to board defendant's moving train, what was the relation between plaintiff and defendant? Was he passenger, licensee or trespasser? If

passenger, the defendant owed the duty of observing the highest degree of care to avoid injuring him; if licensee, the defendant owed the duty of exercising ordinary care; if trespasser, the defendant owed him no duty except not to wilfully or wantonly injure him. If plaintiff was either a licensee or trespasser, clearly no cause of action is alleged, because the defendant company owed him as such no duty to stop the train at the alleged crossing, nor did the company owe him any duty to refrain from increasing the speed of the train just before reaching the crossing after stopping or slowing down. The complaint nowhere alleges that defendant was aware of plaintiff's position or intention to board the moving train.

Then was plaintiff a passenger, so as to throw upon defendant the duty of exercising the highest degree of care toward him? There is no doubt that the relation of passenger may arise before the train is boarded or ticket purchased. In the case of *Johns* v. *R. R. Co.,* 39 S. C., 162, 17 S. E., 698, the Court held a railroad company owed the duty of exercising extraordinary care in providing safe approaches to one coming to its passenger station to become a passenger, whether he had a ticket or not. In 5 Am. & E. Ency. of Law, 2 ed., 488, it is stated: "The relation of carrier and passenger begins when one puts himself in the care of the carrier, or directly within its control, with the *bona fide* intention of becoming a passenger and accepted as such by the carrier. Seldom, however, is there any formal act of delivery of the passenger's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation; hence the existence of the relation is commonly to be implied from the circumstances attendant. The rule is that these circumstances must be such as will warrant an implication that one has offered himself to be carried and that the offer has been accepted by the carrier." In Elliott on Railroads, sec. 1597, it is stated: "A person may become a passenger before he has entered the train or vehicle of the carrier. We think

it safe to say that a person becomes a passenger when, intending to take passage, he enters a place provided for the reception of passengers as a depot, waiting-room or the like, at a time when such a place is open for the reception of persons intending to take passage on the trains of the company." To the same effect are numerous cases, among which see *Webster* v. *Fitchburg R. Co.* (Mass), 24 L. R. A., 521; *Chicago etc. R. Co.* v. *Jennings,* 190 Ill., 378, 54 L. R. A., 827. We accept as correct the results of the decisions as thus summarized by the annotator in 24 L. R. A., 523: "Considering all the decisions on the subject, which establish quite clearly that a person may sometimes be a passenger when attempting to take a train, although he has not yet got upon the car or even procured his ticket, there seems to be no other limitation of the rule so satisfactory as that he must, in order to be regarded as a passenger, present himself in a proper place and in a proper manner, because he cannot be presumed to have an invitation to present himself in any other way. Nevertheless, this rule would not prevent liability in many cases to persons presenting themselves otherwise, and, therefore, not to be regarded as passengers. But to such persons liability would evidently depend on the rule as to negligence towards mere licensees or trespassers." The complaint neither states that plaintiff was a passenger at the time he attempted to board defendant's moving train nor states facts from which the Court could infer the existence of such relation to the defendant carrier. As shown, he did not present himself for carriage at a place where defendant stopped its train for the purpose of receiving its passengers and did not attempt to board defendant's train under circumstances implying an invitation to board as passenger. Defendant being under no obligation to stop at the crossing for plaintiff, it was no breach of duty to plaintiff to fail to do so, and the defendant, not alleged to have any knowledge as to the situation of plaintiff and his attempt to board its moving train, it was not a

breach of any duty to plaintiff to suddenly increase the speed of the train after slowing down for the crossing.

The judgment of the Circuit Court is reversed, and the complaint is dismissed as not stating a cause of action.